Case number 17-3420 and case number 17-3422. Nicola Ruhl et al. v. State of OH Health Department et al. Argument not to exceed 20 minutes per side. Mr. Gannulin, you may proceed with the appellate statements. Good morning. May it please the Court. I'm Richard Gannulin. We reserve five minutes for rebuttal. Fine. I first started representing the minor child four years ago. It's been two-thirds of his life that we've been seeking a just outcome for him. And if I might create just a little context, when I leave here today I'm going to be helping an 18-year-old with autism who, for lack of any other choice, has to attend a full-time residential specialized boarding school for individuals with severe autism. He was supposed to go to a school near Cleveland called Monarch. It costs $280,000 a year. His school district has to pay for that $280,000 a year because he was never educated properly at any point in his life. Are those payments at issue here? That's the context within which... That's the answer to the question. Those are not relevant. Well, it's... We're not talking about whether he's getting that money. I'm just trying to... He's getting that money, presumably. Well, the school didn't... The school district is getting it in order to provide him with a service now. Is that right or wrong? He's been deprived access to that school. I don't want to spend the time. I raise that because this child, in this case, I'm not suggesting he's going to have to go to a residential school at some point, but this child, in this case, is never going to have the opportunity to, for instance, serve as a judge on the United States Court of Appeals for the Sixth Circuit without the benefit of the services that he's been deprived of for four years now. So we've been playing chess with the State of Ohio and its Help Me Grow system for four years, trying to get the services that were due to this minor child. And apparently we're bad chess players because he still has received nothing. The court knows that the background for us being here today is that the State of Ohio, for many years throughout the State of Ohio, deprived all young children with autism of an essential early intervention services mandated under IDEA Part C, and that's the therapy called Applied Behavior Analysis Therapy, which is a scientifically-based, peer-reviewed method that allows children with autism to potentially outgrow, in full or in part, the disabilities that autism imposes on their brain. Eventually, the State of Ohio did provide ABBA to the children in this age group up to age three, correct? Beginning in December of 2013, this child was the first child that the State of Ohio, without a court order, began to provide state-funded therapy in the child's plan. So it's not correct to say you've received nothing? He's received nothing that relates to the claim in this case, which precedes in time December 2013. The family had been seeking for the prior year. The subsequent amount is the other case, right? So we have two cases before the court. You're arguing both of them now? I'm confused a little. You have 20 minutes to argue both of them? Yes. So I think we should get right to the heart of this case in terms of what do you need to do in order to prevail? Your claim has to do with the failure to provide any ABBA benefits up until that December date, correct? That is the first case, yes. And you have a problem with the statute of limitations, right? It's true that the Ohio Department of Health hearing officer declared that the claim for the deprivation prior to December 2013 could only run back to September of 2013. And that issue is in front of us, right? That issue is in front of you. There are a number of different paths around that statute of limitations assertion by the state of Ohio. One is that Congress did not include a statute of limitations in IDEA Part C. Unlike IDEA Part B for children age 3 to 21, which has a statute of limitations, IDEA Part C does not. By regulation there is. The United States Department of Education promulgated, but without authority from Congress. They lacked the authority to promulgate it? Yes. They lacked the authority to promulgate a statute of limitations. Did you argue that in the? Yes. Yes, throughout. There's nothing in IDEA Part C that authorizes the United States Department of Education to promulgate a statute of limitations for the early intervention program for children age 0 to 3. Assuming the court agrees that that conduct by USDOE was ultra vires and unlawful, then the default position is the state of Ohio statute of limitations and all the principles that accompany that. Even if this court empowers the USDOE to create a statute of limitations where Congress itself did not authorize it, the state of Ohio has a savings statute. We asked the Ohio Department of Health hearing officer to apply that savings statute. She ignored it without comment. If the reg is valid, would the Ohio savings statute apply? Yes. There's no reason why it would not apply because the Supreme Court authority cited by the opposing side acts to bar the application of a state savings statute only where there's a national policy seeking uniformity. But the USDOE, in creating its statute of limitations, expressly delegated to each state the right to develop each state's own statute of limitations and expressly said that that state statute of limitations applies. And we have cited in the brief, really both sides have cited in the brief, the state of Ohio statute of limitations that controls. The only reason why there's even discussion about a statute of limitations is that this family diligently filed a federal court complaint against the Ohio Department of Health in September of 2014. And it took one year, but after one year the federal district court dismissed that claim for failure to exhaust. That claim was a claim that the Ohio Department of Health had for years statewide systemically deprived all children in the state of Ohio of their entitlement to applied behavior analysis therapy. It thereby injured the plaintiff, the minor child. Let me ask you a question about that. I just want to make sure I'm clear on the dates. Prior to December 3, 2013, nobody was getting AVA. It wasn't just not the plaintiff in this case. Yes. The state of Ohio's official, that was what was challenged in that first lawsuit. The state of Ohio's official policy was to provide it to no child. And briefly, what, based on that, it's not that he was singled out for bad treatment, but based on that, what was your basis of saying that they had to or should have provided it to everyone prior to that date? Prior to that, in January of 2013, at the beginning of that year, on behalf of another young three-year-old child with autism who lived down here, we filed a federal court lawsuit. The federal district judge issued a temporary restraining order against the Ohio's Help Me Grow system for violating federal law and ordered it to immediately commence, this is in January of 2013, immediately commence providing applied behavior analysis therapy to that child. Once that occurred, then the United States Department of Education, within weeks, issued a cease and desist, this is in January of 2013, issued a cease and desist order against the Ohio Department of Health, telling the Ohio Department of Health to stop violating idea part C and begin providing applied behavior analysis therapy as a mandated early intervention service to young children with autism in the state of Ohio. The Ohio Department of Health, and it's in the record, responded in January of 2013, we will do as directed. So this is the same year that mom is in the courtroom now on behalf of the child, was asking for assistance for her son. And the Ohio Department of Health, Richland County Board of Developmental Disabilities is here as well. Together they constitute the idea part C program for Richland County. That's when they began to give the mom the runaround. They never gave her what's called a prior written notice, which is instrumental in both idea part B and idea part C. We cite the record about seven times establishing no prior written notice. And so they did not get, they did not timely get applied behavior analysis therapy for the child in this proceeding until December, until the end of the year. So all those months, the whole year of 2013 passed without this child getting applied behavior analysis therapy, which... Can I ask a technical question on how these arguments fit together just briefly? Not on your time, but on my time. When you say how these arguments fit, this is really a long response to Judge Guy's question about was this child the first and began in December. There was one court ordered child who received ABA prior to this child in December of 2013, who was the first child to have a plan, a help me grow idea part C created plan, that provided for state funded applied behavior analysis therapy. But he has a remedy, a compensatory remedy for the time that it was not provided. Your red light is on, but I know Judge Rogers has a question or two. There is an argument that your client is not entitled to the reimbursements from September to November, even if... And I'm wondering if, I'm not saying we would be, but if we agreed with them that you weren't entitled to those three months, would that also preclude, would that make moot the statute of limitations issue? Well, these are two separate... What you're describing, as I understand your question... There's a time before September and there's a time from September to December. The statute of limitations doesn't affect the time from September to December, correct? It just deals with times before that. I'm just wondering whether the arguments that are made for and against the period from September to December, if you were to lose those, which obviously you say you shouldn't, and there's a good argument that you shouldn't, but if you were to lose those, would that obviate the need to get into the statute of limitations issue? Because the same reason for losing those would apply to the period before September. Do you understand my question? I do understand your question. What's the answer, yes or no? Probably yes. Okay, thank you very much. Good morning, Your Honors. May it please the Court, I'm Andrew Stevens here from the Ohio Attorney General's Office on behalf of the Ohio Department of Health. Regarding the services... How much time are you taking? I'm sorry, I'm taking 15 minutes and the Arizona County Board of Developmental Disabilities will be taking the other five minutes. Thank you. At the outset, Mr. Daniel mentioned that he's received nothing. In fact, as Your Honors pointed out, in December 2013 he began receiving applied behavioral analysis therapy. But that covers only like six months, right? That would be the time from December until June of 2013, and then thereafter... June of 2014, right. He would have aged out in 2014, June of 2013. That's correct. So his concern is not getting the payments for the time that he was diagnosed as autistic and entitled to the benefits. Correct, and there's a couple different reasons Judge Wynn's decision should be affirmed regarding his appeal there. The two-year statute of limitations applies here. It was properly promulgated under 20 U.S.C. 1402, creates the Office of Special Education Programs within the Department of Education. And 20 U.S.C. 1406 gives them the authority to promulgate regulations for the IDEA, and that being the IDEA in its entirety, B and C. And they in fact did that, and some of the congressional record is cited in our brief. So when they promulgated regulations, did they promulgate regulations that said that they would use the state statute of limitations? They did not. This was a federal statute of limitations that contains language in it that suggests that states could adopt potentially a different time period. But the most important thing to remember is that there are the two enumerated exceptions, and the district court notes that in their opinion, that because these two enumerated exceptions to the statute of limitations are there, the Congress and the Office of Special Education Programs didn't intend for other exceptions to apply. So apart from those two exceptions, did the regulation that was adopted say there shall be a national two-year statute of limitations? It says that parents, when they're filing a due process complaint, shall file it within two years of when they knew or should have known of the alleged ADA violation. Okay, so it couldn't be three years in Florida and five years in Alaska or something like that. No, it has to be two years from when they knew or should have known. That's what the statute of limitations says. Assuming it's authorized, and you're finding authorization from just a general authorization to pass implementing regulations, is that right? That's 20 U.S.C. 1406, that's correct. Is there any litigation or law that says that that very general statute permits the, the regulatory imposition of a statute of limitations? I don't know if there's anything specific to the IDEA Part C, Your Honor, but the statute, and also in the IDEA, there is a statute of limitations in the IDEA statute itself. That just applies to B, though. I think that would apply to, because it's in the IDEA statute, it might apply to Part B and C. If there's a general portion of the statute. I'm confused. I thought the statute of limitations you were relying on was imposed by regulation pursuant to a general statute, which gives the agency power to pass implementing regulations. That's correct, Your Honor. I'm sorry. So you're not relying on some other statute of limitations that is explicit within the statute? No, Your Honor. All right. So with respect to a general grant of regulation passing power, are there cases which say that that includes the power to create a statute of limitations? Or on the alternative, are there cases which say you don't have such power? It seems to be what he's hanging his hat on here, so we might as well figure out what the law is in that regard. But you don't have any cases one way or the other. It just seems like they wouldn't be able to do that. Do you see what I'm asking? Yes. And, Your Honor, the case regarding deference to agency decision-making is Chevron. If you've got to go back to Chevron, then that's not what I'm asking for. Thank you, Your Honor. And Judge Moore touched on it a little bit, but because it's a federal statute of limitations, the state stating statute wouldn't apply here. But you're calling it a statute of limitations. It's a regulation of limitations. It's not a statute. That's correct. And at the state level, they've adopted the same language in the state regulation regarding the timeline for filing a due process complaint. And that mirrors the federal language. Why doesn't it fit within one of the regulatory exceptions, the statutorily authorized, regulatorily imposed limitations period? The exceptions are, one, that there's a specific, and the exceptions are prefaced by the statement that it must have prevented, and I'll read from the regulation, it says the timeline described in this section does not apply to a parent if the parent was prevented from filing a due process complaint due to one, specific misrepresentations by the lead agency or EIS provider that it had resolved the problem forming the basis of the due process complaint. And here there was, there weren't any representations to that effect, but there were communications informing the mother via email and then via letter in June of 2013 that the ABA therapy wasn't being provided, and giving her information about how to file a due process complaint. Doesn't this seem really problematic for the state of Ohio to say we are not, as a policy, we are not going to pay for ABA? And then in January of 2013, and correct me if I'm wrong, January of 2013, because of another lawsuit, and because the Department of Education of the U.S. says you've got to pay, Ohio changes its position and decides it will pay. Why shouldn't the two years run from that point in time? Because that's when a parent should know that they had a right to have Ohio pay for ABA. Yeah, I'm making an argument now. It seems logical based on what we've heard in this oral argument that that's when the parent knew or should have known that they had a right to be paid by, have the children's ABA services paid by the state of Ohio. And so you're referring to the first letter from the U.S. DOE to the state of Ohio, asking them to place a catch-all provision on the list of services that are provided. Yeah, and you could quibble with me about whether January 2013 is the right date, but the essence of my point is if Ohio has been saying all along we will not pay, then to say, well, you should have brought suit a long time ago, seems to me to be unfair at least, if not illegal. Well, we're not saying that they should have brought suit a long time ago. We're saying we should have brought it when, so if it was in January 2013 that they knew, they would have until January of 2015 to bring the administrative complaint. Okay, and when did they, they first filed a case in 2014, in September of 2014, right? But that was the one that was thrown out for failure to exhaust? Correct, and at that time they hadn't filed an administrative complaint. They could have at the same time filed their administrative complaint and asked the federal court to stay proceedings while they exhausted their administrative commitment. And then they filed a lawsuit in September of 2015, and that's why we're going back two years to September of 2013? Well, the two years would be the two years to file the administrative complaint. So they filed the administrative complaint in September of 2015, that's correct, Your Honor. And that would be the date, so the new or should have known date for them to comply with the statute of limitations would be two years prior to September of 2015. So September of 2013, and our argument is that they knew or should have known in, and your argument was they knew or should have known in January, but we say May or June of 2013 when the mom was having the interactions with Richland County and the Department of Health regarding the provision of the therapy, the ABA therapy. And that was when mom wrote the email that Judge Nguyen cited to in his decision saying, I know I have to file a complaint, and the information was given to her about how to go about doing that, and how would you like to proceed with your complaint from the Part C coordinator and the early intervention services coordinator at the county speaking with mom about that. And then there was never anything done about that, and then the administrative complaint comes in September of 2015. I want to ask a question about the period from September to December. What year are we talking about, 2013? Because if you win on those three months, your opposing counsel has basically agreed that we don't need to get into all this statute of limitations issue, correct? Because if it doesn't do those three months, it's not going to do the months before that, right? And the argument is that they didn't show until December of that year that they were financially qualified to get anything, right? That was the argument? Correct, yes. And they would like to challenge that, and they want to submit a financial eligibility determination worksheet, and that was denied, right? That's correct. Was there a proffer of it so that we know what's in that worksheet? I don't believe there was a proffer at the district court, and it wasn't anything that was brought up during the due process proceedings, and that kind of goes back to the way that this is set up, is that the person saying there's been this violation of the ID has the burden of proving the violation, and bound up in that is the burden to prove the financial. So they try to meet their burden of proof by providing this thing, and the district court says it can't be admitted, right? Well, the district court's sitting as an appellate court on review, and obviously if they hadn't presented it below to the administrative hearing officer, then the district court was. The hearing officer wouldn't look at it, is that what it was? No, the hearing officer, it was never presented to the hearing officer, any information about financial qualifications prior to December of 2015. Where was this worksheet submitted first? I don't mean what city, I mean at what level of the... Right, and I'm trying to... Now I'm confused. It was submitted to the agency, or having lost before the agency, it was submitted to the district court. Those are the two possibilities. It wasn't submitted, but they tried to submit it. It says here, I'm looking at page ID 356, it says, plaintiffs seek to provide the Help Me Grow system financial eligibility determination worksheet, showing their gross income and their cost share deductible. That's what I want to ask you about. Is that the only language that refers to it anywhere, or was it submitted before? We just don't have any idea. In the record, I don't believe it was submitted before. Because they weren't allowed to submit it? Because they just did not submit it at the administrative hearing. They said that they were seeking to provide it. I mean, you can look on the page ID. Is that the plaintiff appellant's motion to submit additional evidence? Yeah. I think if you look to the administrative decision in the administrative record, I don't believe that was part of their exhibits at the administrative hearing. It was part of their motion as to what they wanted to submit? On appeal, at the district court. All right, at the district court then. So they wanted to show it at the district court, but they didn't submit it to the administrative hearing officer. And the district court said no? Correct. Why shouldn't the district court have said yes? In which case, they might have been able to prove what they were thrown out of court for not proving. That's my question. I assume you have an answer, but I'd like to know what it is. Yes. So at the administrative hearing level, it wasn't presented as evidence. And the district court sitting as an appellate court on review, I mean, your court wouldn't take information that wasn't presented. I'm talking about the district court. Right, but I'm talking about a court sitting as an appellate court on review. They're not the initial decision maker here. That was the administrative hearing. So when was the full financial information actually given to the hearing officer? That was given in December 13, is that right? Well, the full financial information would have been given to the Department of Health directly. Because it wasn't due to, the hearing wasn't until December of 2015. Okay, so it was given to the department. Given to the department. Yeah, there was an application process for the early intervention system of payment. Because there's a whole host of regulations. And that was given because the September 2013 submission was deemed to be inadequate, is that right? Well, the September, there's a spend down. So it's a 12-month look back. So if they were eligible in December, by their November or December application in 2013, that wouldn't necessarily apply to May or June of 2013. That's what I wanted to get at. So how do we know when the spend down occurred? The spend down would have occurred in November after they were initially denied. Because they filed an application. The agency or the administrative people had papers before them indicating that that's when the spend down occurred. And that's why in November they started to get the benefits. Is that the idea? Correct. And their argument that they were entitled before just wasn't presented, is that the argument? That's the argument, yes. And in the attempt at the court to demonstrate that the spend down had occurred earlier, just wasn't presented? It was too late for them to show it at the court level? Because they should have showed it earlier to the administrative hearing panel? Is that the argument? That's the argument, Your Honor. Okay, thank you. And I see my time is up. I would just ask the court to affirm the district court decision. Thank you. Your Honors, my name is Franklin Hickman. I represent the Richland County Board of Developmental Disabilities, which is called Richland New Hope mostly in the pleadings. I think it's telling that in all of the discussions that were presented by both Mr. Gangelin and the Department of Health, that there was only a passing reference to the DD board, Richland New Hope. Why we're in this case is a mystery. And if you look at the pleadings, the original lawsuit not only did not mention the board as a party, but used affidavits from the superintendent as a major source of information to support their claims against the Department of Health. The original due process complaint attached that federal lawsuit in its entirety, and had a phrase in the cover letter saying that the only reason Richland New Hope was being included is because the Department of Health said that we were a necessary party in a prior case. If you look at the second due process case, Richland New Hope isn't even mentioned. There's mention of the early intervention system, but there's no mention of the board as having failed in any specific regard. Does it make any difference whether you're a party or not? If you're co-council's party, which is ODH, right? If they lose, money will have to go out. Will extra money have to come out from you? We have been found to have violated nothing, so I would assume not. What's the harm in standing along and just serving as an additional party for formal purposes? You're not going to have to pay extra money that ODH isn't going to pay, are you? I would expect not, but there's a great deal of taxpayer money being spent on me standing here before you today. So it's the litigation expenses of you having to defend it as well. The other reason why this is really important to the board system, and I represent similar boards around the state, the reason it's important is because if there is a finding that Richland New Hope had a duty to provide ABA services, even though it wasn't ever offered, even though they had no staff for it, what board in their right mind would continue to be part of the early intervention program? That's why this is important to the boards. There's a precedent here which could kill the participation by the DD boards around the state in this program. Are you a service provider in the terms of this litigation? We are a provider of services that were specifically agreed to by Richland New Hope, period. And the argument that the plaintiffs are making, which is so disturbing to the system, is that if you agree to do the limited service coordination, developmental evaluations and assessments, that makes you responsible to provide all the services that are in the plan. That's why this case is so difficult for the boards, and that's why I'm standing before you here today. IDEA has, as you know, Part B and Part C. In Part B, school districts are responsible for providing all of the services in the IEP, in the individual education plan. That's radically different from the system in early intervention, where private entities, public entities say, okay, I'll do X, Y, or Z, but that's it. And what the plaintiffs are attempting to do is to say, if you agree to do X, you also have to do everything else that's in the plan, and that's an untenable position. If the ODH loses on all of the plausible issues that it could lose today, and it gets sent back and appropriate relief is filed, is entered on the basis of having lost all of those issues, how are you affected differently other than having some kind of court decision that goes against you and having to defend it by an attorney, which is substantial. But other than that, how are you affected? If the issues about the department's failure to provide regulations that supported ABA services are sustained in favor of the plaintiff, it would have no impact on the boards. So why is that going to deter them from participating if they occasionally get named along with the ODH in litigation like this, if losing that litigation doesn't affect them? Well, it depends on what the court decides. If you decide all the issues in favor of the plaintiff, is that what you're asking? Then the decision would include a finding that Richland knew... A finding, but in terms of money, what would it affect? You wouldn't have to pay any more than you would if you had not been a party, would you? We would. If we had a duty and failed in the duty, we would be responsible for paying for a compensatory education. That would come from the state, that would come from you? Well, if we had an independent failure to follow a rule, yes. But your position, I thought, at least in reading one or another of the briefs, was that you didn't have funding dollars, that you got all the money from the state. We got money from a variety of sources. We didn't get a dime from the Department of Health. But in a proper functioning of the ABBA system for early childhood, the state would pay for the provision of services that you and other service providers would provide. In a proper functioning of the system, you would look at a variety of sources, and if all else failed, then the department would jump in. There are entities that do provide ABA services. Schools, for example. Preschools. So there might be, in some rare instances, there were no providers that were certified during the course of this litigation. Who could have provided it, but we were not among that group that had any competence or funding to provide or fund those services. I would like to make one clarification, with the Court's permission, on the statute of limitations issue. If I may. The statute of limitations is defined in 34 CFR 303.440. And it says that the due process complaint has to be brought within two years. Or, if the state has an explicit time limitation for filing a due process, then the time allowed by state law. So it incorporates an alternative state. And this is the critical phrase that's in 303.440A2. Except that the exceptions to the timeline described in 303.443F apply to the timeline in this section. That's why the Ohio Savings Statute doesn't come into play. Because the federal rule, which allows states to come up with a different timeline, or a different statute of limitations, explicitly says that the only, it says, the exceptions that are listed in 443 apply to the timeline. Am I making sense? Thank you. You have clarified, you've also gone well over the time that you had, and so we appreciate your clarification. And we will allow your opponent to have a few extra minutes to respond to that. First, counsel for the Ohio Department of Health referenced a June 2013, what he called, notice to the family about their rights. You have this in your exhibit books, it's referenced. This is not an idea, part C, prior written notice. This talks about Medicaid. This talks about school districts. Can you give us the page ID of that? You're talking still about statute of limitations, right? I'm talking about the fact that the Help Me Grow system never gave this family prior written notice. Is that part of your limitations argument, or part of some other argument? It is part of the limitations argument, because statute of limitations, an idea, should not run, cannot run, where a family has not received prior written notice, to tell them. If I may, I would like to ask about the three month period. Presumably they don't get the support, or the benefits, or whatever it's called, if they're not qualified for it financially, is that correct? That's a yes or no question. They need to be qualified for it in order to be entitled to it. But they need to be entitled to it in order to qualify, right? Is that right? There's a deductible. They have to be financially qualified to be entitled to it. Is that sentence correct? I think that's wrong. Every child with a disability is entitled to early intervention services. For families who are particularly well-to-do, or even this is a modest family, there's a cost share, which is what this issue has been about. If they don't reach the cost share, then they're not entitled to anything. Is that correct? No. The child is entitled to full services regardless. The family has to contribute depending on their income. They can't sue themselves. So if their income is too high, they're not entitled to anything from these defendants. Is that correct? It's a hypothetical question. Let's hypothesize. They're millionaires, and they haven't paid up to whatever the cost share deductible is for millionaires. Then they lose for those three months. It's so complicated, they don't even know how to explain it. I went and looked at it. It's not that complicated. Basically, if you have a certain level, if you can figure out what 185% of the poverty level is, which I assume you can, and that's so many thousands, and if your income is below that, you don't get anything. If your income is above it, you have to pay certain amounts. Once you've paid those, then you may get something over those amounts. It's not that hard. But my first question is, if you fail that, then the agency, I want to call it the agency, then the administrative hearing officer properly denied relief. It's an if question. If you fail that monetary test, you don't get anything. Is that right or wrong? At the time, this family was approved for services. With all this financial information that they're trying to wave around now, they had it. That was their information. That's what the administrative hearing officer relied on, wasn't it, that they hadn't shown financial eligibility until December? That's why we call it a red herring. This family was never given, the whole time during 2013, when this family was seeking services for their son, they were never once told by the Help Me Grow system, you don't qualify for financial reason. They never got a prior written notice that would have allowed them to challenge that. This was nothing but a post hoc surprise instruction to their hearing examiner to, hey, deprive this family, because they didn't show what they could do. That had already been determined by December 2013, by the Help Me Grow system, when they evaluated, finally evaluated, and put ABA services in the child's plan in December 2013. They went through that whole process. I guess you just have to say it again, because I'm not seeing how that's a red herring. If it's required, which is the question you won't answer, my question is, is it required? Is it required or not required? It's required and it was done. It was done. They had information. This is not a situation where they were denied because Ohio didn't offer ABA services to young children with autism prior to December 2013. As of December 2013, they had finally evaluated the family's financial information and placed Ohio paid ABA services in the child's plan. The family was financially approved as of December 2013 by their own assessment, and it was never an issue that, and you used the prior year's income to make that determination by their own regs, which are cited. It was a determination by the hearing officer that they weren't qualified before that time or not? It wasn't an issue, it was never an issue that was identified for litigation. There was no notice. I thought there was a determination that they were not qualified from September 13 to December 13. This is what we call ambush, surprise. Yes, the hearing examiner wrote that, but there was no reason for the family to present, to know that it had to present information. They didn't ask, the hearing examiner could have asked, anybody could have asked. The trial court could have allowed us to rectify that if it really was a substantive issue. The family never had prior written notice that they were disqualified from September to December for financial reasons. If we had prior written notice, then we would have asked a question or two at the hearing. We had no reason to think that was an issue subject to litigation. You have been talking about prior written notice. What you wanted prior written notice of was the disqualification. The reasons for the disqualification. We don't have that, they never provided that. When did you first apply for ABA benefits to be paid by the state? Okay, the child was admitted to the Help Me Grow system when he was six months old, back in November 2011. So he was in the system as time passed and he began to regress. And the mother began to tell the Help Me Grow officials with Richland County and the state of Ohio, I think he has autism. We go down the path where eventually he's diagnosed with autism earlier in 2013. Prior to that, there was some confusion about whether he had autism or not. But my question is when did the family first apply for the ABA benefits to be paid by the state? They were asking for benefits beginning as early as 2012. There was no official autism diagnosis then, but he was regressing. And they would ask, they would get denied orally, go talk to the state of Ohio. At that point it wasn't that they were being denied for financial reasons, they were being denied because the state of Ohio said we will not pay for anybody. Bingo, yes, absolutely. And then in January of 2013, according to your earlier argument, the state finally is told by the Department of Health and Human Services, federal Department of Education, you must pay for ABA benefits for these children under the age of three. Yes. So then at that point, when you knew about that, because I believe you were involved in that case, did your client file an actual application? I only met this client in October of 2013. Okay, so you didn't know. That was a different case, different mom, different client. She contacted me in October of 2013. Okay, had she applied for ABA benefits to be financed by the state? Throughout, yes, the record should be clear. Okay, so the record has those kind of things in it. Okay, great, thank you very much. One last question, what in, very briefly, would you say, what your Richland opponent said that sounded kind of persuasive, why do you need to keep them in the case? Okay, well, when we filed the 2014 federal court lawsuit against the state of Ohio, the state of Ohio was not a federal court. Again, the state of Ohio, it's the lead agency for this idea, Part C system, Help Me Grow system, it's called. The state of Ohio moved to dismiss that federal court lawsuit on the ground, among other grounds, on the ground that we failed to add a necessary party. And they have throughout said that Richland County, which is their early intervention service provider for Richland County, the two together constitute the Help Me Grow system for Richland County. The state of Ohio has been insistent on that, and I have to let you know, in that first case I had, not before the court, now the first one, that led to the federal court TRO in January of 2013. Once the court issued the TRO, and we filed a due process case at that time for that child, the state of Ohio had its hand-selected private lawyer hearing examiner. They had their hearing examiner rule against that family because, in that case it was Claremont County right next to us here, the Claremont County Board of Developmental Disabilities was not named as a party. We only named the Ohio Department of Health. So what the Ohio Department of Health did then, because they're always looking, as they play this chess match, they're always looking to make a move against us, they had their hearing examiner rule against us because we had not included the Claremont County Board of Developmental Disabilities. So that's the same year. The boards of developmental disabilities are so-called service providers. And so the question then is whether, one question could be, whether the Ohio Department of Health is being consistent in its insistence on service providers being named. But then there's the legal question whether we need to... First of all, at the due process hearing we weren't allowed to ask a lot of stuff. We did ask for judicial notice of what I've just described, but it went unattended. We've gone way beyond the time frame. I guess I'm fixated on this financial eligibility determination worksheet. You sought to provide it, right? Once we learned what happened, we sought to ask the district court judge, as the statute provides, to allow us to introduce that as evidence, yes. And when you sought that, did you file a motion seeking that? Did you attach this thing to the motion so that the judge would know what it was? Without looking, I don't recall it was identified in detail. Well, if you did, it would be in the record, right? So if we can't find it in the record and you didn't attach it, then the... The judge court says something like, we already have information. That's what he said. But it's hard for us to evaluate that unless we can see what it is, other than your characterization of it, which is pretty brief, understandably. I don't recall. But I have to say, if I might, this is what they used in the first place to, in December of 2013, put ABA services in the child's plan in the first place. They had all this. But if you had it and it was enough in December, that doesn't mean it was enough in September. The financial, they go back to the prior year's income, nothing changed, does it? I thought it had to do with expenses. Obviously it changes, at some point you're paid up and then it starts to hook in, right? It's on a rolling 12-month, how-much-you-pay basis? It's a deductible. As you did the math before, there's an amount a family has to pay as a deductible. They would have paid that deductible at any point in the year. For them it was like $2,200. So of the cost of the Applied Behavior Analysis Theory, they paid the $2,200 once it was finally in his plan, and then the State of Ohio paid the rest. They would have paid their deductible at any point. It wasn't an issue. When you file a due process complaint, they file a response. They didn't identify this as an issue in their response. They didn't identify this in any prior written notice to tell the family, you're not qualified for this time period when the State of Ohio didn't offer it to anybody. And Judge Guy, if I can just say, I know I'm grabbing time here, the State of Ohio may not have selected this particular child, but they did select all young children with autism, age zero to three, in the State of Ohio for discriminatory treatment by removing this particular child. Removing the essential service all those children needed in order to break out, to the extent they can, of the constraints of autism. We thank all of you for your argument.